UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| FREDERICK L. TAYLOR, | ) | CASE NO. 20-11753 |
| | ) | |
| | ) | |
| DEBTOR. | ) | HON. DEBORAH L. THORNE |

**NOTICE OF MOTION**

TO: See attached list

    PLEASE TAKE NOTICE that on **Thursday, October 29, 2020,** at **9:00 a.m.**, I will appear before the Honorable Deborah L. Thorne, or any judge sitting in that judge's place, and present the **MOTION TO DISMISS CHAPTER 7 CASE** a copy of which is attached.

    **This motion will be presented and heard electronically using Zoom for Government.** No personal appearance in court is necessary or permitted. To appear and be heard on the motion, you must do the following:

    **To appear by video**, use this link: https://www.zoomgov.com/. Then enter the meeting ID and password.

    **To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828- 7666. Then enter the meeting ID and password.

    **Meeting ID and password**. The meeting ID for this hearing is 160 9362 1728 – no password required. The meeting ID and further information can also be found on Judge Thorne's web page on the court's web site.

    **If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

                                                     */s/ Jeffrey Gansberg*
                                                     Jeffrey Gansberg, Trial Attorney
                                                     U.S. Department of Justice
                                                     Office of the United States Trustee
                                                     219 S. Dearborn Street, Room 873
                                                     Chicago, Illinois 60604
                                                     (312) 886-3327

    I, Jeffrey L. Gansberg, an attorney, certify that I served a copy of this Notice of Motion and Motion on each entity shown on the attached list at the address shown and by the method indicated on the list on October 16, 2020, before 5:00 p.m.

                                                     /s/ *Jeffrey L. Gansberg*

1

## SERVICE LIST

**Registrants Served Through the Court's Electronic Notice for Registrants:**

- David M. Siegel        davidsiegelbk@gmail.com
- Ronald R. Peterson     rpeterson@jenner.com
- Nisha B. Parikh        ILBankruptcy@dallegal.com

**Parties Served via First Class Mail:**

*See Attached Declaration of Mailing/Certificate of Service*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| | ) | |
| FREDERICK L. TAYLOR, | ) | CASE NO. 20-11753 |
| | ) | |
| | ) | |
| | ) | |
| DEBTOR. | ) | HON. DEBORAH L. THORNE |

### MOTION TO DISMISS CHAPTER 7 CASE

Patrick S. Layng, the United States Trustee for the Northern District of Illinois (the "U.S. Trustee"), by and through his undersigned counsel, hereby moves (the "Motion") for entry of an order pursuant to Section 707(b)(1) dismissing the above-captioned Chapter 7 case based on the totality of the circumstances test under Section 707(b)(3). In support of the Motion, the U.S. Trustee submits the *Certification of Andrew Hunt in Support of Motion to Dismiss Chapter 7 Case*, attached hereto as <u>Exhibit A</u>, and the *U.S. Trustee's Analysis of Debtor's Schedule I and J*, attached hereto as <u>Exhibit B</u>, and respectfully states as follows:

### JURISDICTION

1. The Court has jurisdiction to hear and determine this proceeding. *See* 28 U.S.C. § 157(b)(2), IOP 15(a) and Local Rule 40.3.1 of the United States District Court for the Northern District of Illinois.

2. Movant is the U.S. Trustee for the Northern District of Illinois and is charged with supervising the administration of bankruptcy cases under 28 U.S.C. § 586(a). The U.S. Trustee has standing to bring this Motion under 11 U.S.C. § 307.

## BACKGROUND

3. On May 30, 2020 (the "Petition Date") the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. That same day, the Debtor filed a Statement of Financial Affairs (the "SOFA") and bankruptcy schedules (the "Schedules"). The Petition, Schedules, and Statement of Financial Affairs are attached hereto as Exhibit C.

4. On the Petition, the Debtor asserts that he has primarily consumer debts. [Exhibit C, page 6, question 16a].

5. On August 20, 2020, the Debtor filed his amended Schedule E/F, a copy of which is attached hereto as Exhibit D. The significant change to Schedule E/F was the removal of a unsecured debt to PHH Mortgage Corporation that allegedly arose as the result of a "short sale" of the 1811 South Cicero Property (as hereinafter defined).

6. According to Amended Schedule E/F, Debtor has non-priority unsecured debt of $18,135. Schedule A/B lists real and personal property in the amount of $325,750. The Debtor's real property consists of two parcels of real estate: a single-family home at 4371 187th Place, Country Club Hills, IL (the "187th Place Property") and a single-family home at 18811 South Cicero, Country Club Hills, IL (the "18811 South Cicero Property"). During his 341 meeting, the Debtor testified that he intended to surrender the 18811 South Cicero property in foreclosure, which is not his primary residence.

7. According to Schedule I, the Debtor is employed as a driver for United Parcel Service earning $9,236 in monthly gross income or $110,832 annually. [Exhibit C, page 29] and his non-filing spouse is unemployed. The Debtor's net pay after payroll deductions is listed as $5,924.[1]

---

[1] Included in this figure are the following deductions: $2,019 for Tax, Medicare and Social Security deductions, $99 for insurance, $1,083 for domestic support obligations and $111 for union dues.

4

8. Schedule J lists monthly expenses as $5,924, which exactly totals the Debtor's monthly income. Although the Debtor's Schedule J indicates that he has no money for unsecured creditors, it includes a $1,230 mortgage expense for the second property, the 18811 South Cicero Property, which the Debtor has testified that he intends to surrender.

9. Despite the Debtor's testimony at the meeting of creditors that he intended to surrender the 18811 South Cicero Property, further discussions with his attorney indicate that he does not intend to surrender the 18811 South Cicero Property, but rather, intends to retain it and continue making payments.

## RELIEF REQUESTED

10. By this Motion, the U.S. Trustee respectfully requests entry of an order, pursuant to Section 707(b)(1) and Section 707(b)(3), (1) dismissing the above-captioned Chapter 7 case for abuse based on the totality of the circumstances test, and (2) granting such other relief as the Bankruptcy Court deems just and proper.

## BASIS FOR RELIEF

### I. Applicable Legal Standard

11. Section 707(b)(1) of the Bankruptcy Code permits the dismissal of a chapter 7 debtor's case if granting relief would be an abuse of the provision of this chapter. *In re Smith*, 2016 WL 7441605, at *3 (Bankr. N.D. Ill. Dec. 27, 2016). Under Section 707(b)(3), the Court should dismiss a debtor's case if it finds that the totality of the circumstances of the debtor's financial situation demonstrates abuse. Section 707(b)(3) directs bankruptcy courts to consider whether the bankruptcy case is an "abuse" of the Chapter 7 process based on factors other than those addressed by the Means Test in Section 707(b)(2). "Section 707(b)(2) creates an objective test under which some cases are presumed abusive. Section 707(b)(3) permits dismissal even if a debtor passes the

5

objective test, setting up a contrasting 'totality of the circumstances' test that requires a more subjective, holistic assessment of the debtor and their circumstances." *In re Lowe*, 561 B.R. 688, 690 (Bankr. N.D. Ill. 2016). "The structure of the statute, however, suggests that the test requires a subjective, holistic assessment of the debtor and his circumstances." *In re Victor & Stacy Watts*, 557 B.R. 640, 646 (Bankr. N.D. Ill. 2016); *See also* Hon. Eugene R. Wedoff (ret.), *Judicial Discretion to Find Abuse Under § 707(b)(3)*, Am. Bankr. Inst. J., April 2006, at 1, 54 ("Section 707(b)(3) requires judges, when an abuse motion is raised, to determine the debtor's actual financial condition, including debt-paying ability. Ultimately, even when the means test does not presume abuse, genuinely wealthy debtors may be denied chapter 7 relief").

12. Specifically, the Court "shall consider" whether the case was filed in "bad faith," *See* 11 U.S.C. § 707(b)(3)(A), or whether "the totality of the circumstances of the debtor's financial situation…demonstrates abuse." See 11 U.S.C. § 707(b)(3)(B). In analyzing whether dismissal of a case is warranted under the totality of the circumstances test, courts focus on several factors, including whether the debtors have the ability to repay a portion of their debts. *See In re Bacardi*, 2010 WL 54760, at *3 (Bankr N.D. Ill. Jan. 6, 2010) (noting that ability to repay debts standing alone could be sufficient to warrant dismissal, although other facts might be relevant).

13. The primary factor when assessing abuse under Section 707(b)(3) is the debtor's ability to fund a chapter 11 or chapter 13 plan to repay their creditors. *See In re Behlke*, 358 F.3d 429, 437 (6th Cir. 2004) (finding substantial abuse [under the former, lower standard] where debtors had ability to pay 14% dividend to unsecured creditors); *In re Green*, 934 F.2d 568 (4th Cir. 1991); *In re Lorenca*, 422 B.R. 665 (Bankr. N.D. Ill. 2010). In *In re Bacardi*, 2010 WL 54760 (Bankr. N.D. IL. 2010), the Court concluded that a debtor's ability to pay, without more, was a sufficient basis to dismiss a Chapter 7 case under Section 707(b)(3).

6

14. Additional factors to be considered are as follows: (1) whether the petition was filed because of sudden illness, calamity, disability or unemployment; (2) whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay; (3) whether the debtor's proposed family budget is excessive or unreasonable; and (4) whether the debtor's schedules and statements of current income and expenses reasonably and accurately reflect the true financial condition. *In re Lorenca*, 422 B.R. 665, 669 (Bankr. N.D. Ill. 2010) (*citing In re Cutler*, Bankr. No. 08–15568–AJM–7A, 2009 WL 2044378, at *3 (Bankr. S.D. Ind. July 9, 2009)).

15. "The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor." *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367, 127 S. Ct. 1105, 1107 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279 (1991)). The Debtor's inclusion of $1,230 in mortgage expense for the 18811 South Cicero Property, which he indicated his intent to surrender, highlights that he is not an honest but unfortunate debtor.

II. **The Debtor's Schedules and Statement of Financial Affairs**

16. On the Petition Date, May 30, 2020, the Debtor filed his Schedules and Statement of Financial Affairs. [Dkt. No 1].

17. On his Schedules, the Debtor indicates the value of the 18811 South Cicero Property was $110,000. *See* Schedule A, Schedule D. The Debtor schedules the secured claims against the 18811 South Cicero Property totaling $135,000. *See* Schedule D.

18. Additionally, the Debtor's Schedules indicated that his expenses exactly equaled his income. *Compare* Schedule I with Schedule J. Part of that calculation included the monthly payment of $1,230 on account of the 18811 South Cicero Property.

19. Moreover, in his original Statement of Financial Affairs ("SOFA"), the Debtor indicated that he had sold the 18811 South Cicero Property at a short sale on October 23, 2019

20. And, although indicating that the 18811 South Cicero Property was sold at a short sale, the Debtor filed a Statement of Intention indicating that he intended to keep the 18811 South Cicero Property and continue making payments.

21. Subsequently, and only after discussions with the trial attorney for the U.S. Trustee, did the Debtor file certain amended schedules and SOFA. [Doc. No. 16]

22. In his Amended Schedules and SOFA, the Debtor amended his disclosures regarding the 18811 South Cicero Property. Specifically, in his Amended SOFA, the Debtor indicated that the 18811 South Cicero Property had not been sold at a short sale. Rather, the Debtor amended his SOFA to indicate that the 18811 South Cicero Property is subject to a pending foreclosure action in the Circuit Court of Cook County. *See* Amended SOFA at question 9. Similarly, the Debtor amended his Schedule E/F to indicate that he did not owe an unsecured claim to the mortgagor for the 18811 South Cicero Property –because it had not been sold. Despite the Debtor's amendments, his retention of the 18811 South Cicero Property is improper because although there is no value in the 18811 South Cicero Property for the estate or creditors the Debtor intends to keep the 18811 South Cicero Property and continue making the mortgage payments -- to the detriment of his creditors.

23. The Debtor did not amend either his Schedule I or his Schedule J and still includes a monthly payment in the amount of $1,320 on account of the 18811 South Cicero Property.

### III. The Debtor's has Sufficient Income to Repay Creditors

24. There are two reasons why the Debtor's case is abusive under Section 707(b)(3). It is abusive either because the Debtor seeks to retain a non-income generating investment property, in which the estate has no equity, at his creditors' expense, or if the Debtor is going to surrender the property, he is erroneously including the carrying costs in his future monthly expenses.

8

Removing the monthly payment obligation for the 18811 South Cicero Property will enable the Debtor to fund a 100% repayment plan to his creditors in less than 60 months under a chapter 13 plan.

25. Contrary to his testimony at his 341 meeting, the Debtor is attempting to keep the 18811 South Cicero Property, a second property, by making payments to the mortgagor at the expense of his creditors. It appears that the Debtor is attempting to use the 18811 South Cicero Property as a "savings plan for the Debtor[ ], as eventually [he] would reap the benefit of any equity which the property accrues should market values rise." *See Lorenca*, 422 B.R. at 674 (debtors were not entitled to keep rental property which did not generate positive net income instead of paying their creditors); *see also*, *In re Brace*, 430 B.R. 513, 515-16 (Bankr. N.D. Ill. 2010) (court finding abuse where debtor owns a second home used neither as a residence nor a rental property but intended to reaffirm the mortgage thereon).

26. Allowing the Debtor to keep ". . . that property would defeat the purpose of the Code which seeks to have debtors pay what they can to creditors. [The Debtor] can, without stress, abandon the [18811 South Cicero Property] to foreclosure and use some part of [his] present payments on expenses for that property toward payment to [his] unsecured creditors in a Chapter 13 plan. *Lorenca,* 422 B.R. at 674-75.

27. Alternatively, if the Debtor surrenders the 18811 South Cicero Property, it can no longer an expense included on Schedule J. Because only expenses actually incurred and paid can be included on Schedule J, the Debtor is required to add back $1,230, the amount of the to the Debtor's reported net disposable income of $0 results in a total of $1,230 in net monthly income. *See e.g. In re Bacardi*, No. 09 B 25757, 2010 WL 54760 at *4 (Bankr. N.D. Ill. Jan. 6, 2010) (determining that monthly mortgage expense on Schedule J would decrease once properties were

9

surrendered). As discussed in <u>Exhibit A</u>, the Debtor contributing the $1,230 payment to his creditors under a chapter 13 plan would allow the Debtor to pay his unsecured creditors a significant portion, if not all, of the Debtor's obligation to them, in less than 60 months.

28. By excluding the mortgage expense for the 18811 South Cicero Property, the Debtor can repay all of his debts, and, therefore, the U.S. Trustee believes that this case is an abuse under the totality of the circumstances. The Debtor should not be entitled to speculate on the value of the 18811 South Cicero Property and retain it for his sole benefit while neglecting his creditors.

### IV. The Other Factors Do Not Negate a Finding of Abuse

29. Courts look at other relevant factors, including (1) whether the petition was filed because of sudden illness, calamity, disability or unemployment; (2) whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay; (3) whether the debtor's proposed family budget is excessive or unreasonable; and (4) whether the debtor's schedules and statements of current income and expenses reasonably and accurately reflect the true financial condition. *See Lorenca*, 422 B.R. at 669.

30. With respect to the first factor regarding the events leading to the filing of the case, it does not appear that the Debtor filed this case due to a sudden calamity, illness, or disability. *See In re Mooney*, 313 B.R. 709, 717 (N.D. Ohio 2002) ("this is not a case where Debtors attempt to discharge unsecured debt was caused by a catastrophic event but rather, by their own poor decisions). The Debtor is not needy but rather earns a substantial amount of income per year. According to the Debtor's Schedule I, he does not anticipate any significant changes to his income in the next year and there does not appear to be any unanticipated problem or sudden financial calamity that forced the Debtor to file the present bankruptcy case.

31. To conclude, the Debtor in this case is not needy and earns a substantial income. According to the Chapter 7 Statement of Current Monthly Income, the Debtor earned $27,073 more than the median income for his household size and could make meaningful payments to his creditors with very little interruption to his lifestyle. As demonstrated above, the Debtor could pay his creditors a substantial dividend, perhaps in full, under a chapter 13 plan. Based on the facts in this case, the filing of this case is abusive under Section 707(b)(3), and the Court should dismiss the above-captioned case under the totality of the circumstances.

**WHEREFORE**, based upon the reasons set forth above, the U.S. Trustee requests that this Court enter an order dismissing this case pursuant to 11 U.S.C. § 707(b)(3), and grant any further relief as this Court deems just.

    RESPECTFULLY SUBMITTED,

    PATRICK S. LAYNG
    UNITED STATES TRUSTEE

Dated: October 16, 2020    */s/ Jeffrey Gansberg*
    Jeffrey Gansberg
    Trial Attorney
    U.S. Department of Justice
    Office of the United States Trustee
    219 S. Dearborn Street, Room 873
    Chicago, Illinois 60604
    (312) 886-3327